Your Honor, the first case of the morning, call 213-0950 in the state of Illinois v. Larry R. Barrett. On behalf of Mr. Barrett, Sherry R. Silver, and on behalf of the people, Mary A. Fine. Good morning, Counsel. Ms. Silver. Good morning, Your Honors. Counselors. May it please the Court, I am Sherry Silver, and I'm representing Larry Barrett in this appeal. In 2009, Larry Barrett entered a fully negotiated plea to one count of what was ultimately a 49-count indictment. Pursuant to the plea, he would serve 15 years at 85%, and then he would be subject to an MSR period of from three years to life. Mr. Barrett was properly admonished as to the necessity of filing a motion to withdraw the plea should he seek to appeal, but no motion to withdraw was filed and no direct appeal was taken. To backtrack just a little bit, prior to the plea, Mr. Barrett filed various pretrial motions, including two motions to suppress evidence and one motion to suppress statements. The motions were fully litigated and they were denied. One motion to suppress alleged an issue that the Court below referred to as one of first impression for Illinois, and that is whether a pretrial detainee retains privacy rights in possessions within his cell. Before we get to that issue, I mean, why don't we frame it? We're talking about, through alleging ineffective assistance, we've got this Strickland standard, two prongs. The performance prong, if you will, and the prejudice prong. In order to meet that standard, would we have to find that, on appeal, the defendant would have been successful in his motion to suppress in order for the Court to find that the prejudice prong has been met? No. Why not? The reason for that is, and actually it's in a case that's cited by the state, People v. Cunningham. In People v. Cunningham, they cite it at page 16 of their brief. In Cunningham, Tracy Cunningham pled guilty under a fully negotiated plea, same deal, and he had pre-plea motions to suppress. I can't remember if it's one motion or two motions. He did file a motion to withdraw the plea, and at the hearing on his motion to withdraw the plea, he and the counsel and prosecutor both commented that the sole reason that they were filing the motion to the, sorry, that the motion to withdraw the plea was filed was to preserve the motions to suppress. The Fourth District Appellate Court said, sorry, no go. When you enter a guilty plea, you are waiving all non-jurisdictional issues. And at page, I believe it's 349 or 350 of the decision, the Appellate Court makes a comment that the state and the appeal tried to argue the merits of the suppression issues. And the Appellate Court said, you can't do that. This is precisely the thing that is being unreviewable at this point because it's waived by virtue of the guilty plea. I think, I don't know if I agree with that. I don't know if you've looked at the Supreme Court's Hodges case. What you seem to be saying is even if we were to find that a motion to suppress was totally frivolous and had no merit, the fact that it wasn't preserved establishes prejudice. Is that your presumption?  But Hodges doesn't say that you. That was my question. You need to establish both elements. You need to establish an arguable claim. And that's quite a bit different than establishing both prongs of the claim. But again, if we were to conclude that the motion to suppress had no merit, where would that leave you? If indeed it had absolutely no merit, that there was, that counsel acted reasonably, that there was no prejudice, all that kind of stuff, then I would probably have to agree. But the problem is you only need to establish the gist of that claim, the arguable claim that's not contradicted by this record. And the claims that Mr. Barrett made in his post-conviction petition are not contradicted by the record. Let's talk about that. Let's talk about the DNA. Are there any Illinois cases that I don't think counsel unearthed any that precisely address that issue of the right of privacy with a pretrial detainee? No. There are no Illinois cases that I could find and the State doesn't find any either. However, there are the out-of-state cases and there's a couple of federal cases that talk about how pretrial detainees do retain a privacy right. Really? I think the case law is the opposite. And we have a couple of U.S. Supreme Court cases also that are instructive. I'd say they don't. But the U.S. Supreme Court talk about post-trial detainees, convicted felons. And that's in our brief. Let me find that page for you. Hudson v. Palmer is one of them. Right. That is the one. Bell v. Wolfish is the other. Right. And those protections do not extend to convicted inmates. We're talking about pretrial detainees. Well, why should it be different for pretrial? Because they're not convicted of anything. There's not been proof beyond a reasonable doubt. But what does the conviction matter in terms of whether somebody is given a toothbrush in their cell? What does it matter if they're convicted or they're on a pretrial basis? They're issued property by the jail or prison authority to use while they're there. So? The problem with this is we're still at the stage where Mr. Barrett or any pretrial detainee has not been convicted. We don't know from the basis of this record what the circumstances were of them getting that toothbrush or razor. They only tested the toothbrush that we know of. But we don't know what the circumstances were. We don't know whether they picked up that toothbrush two hours after the guy probably used it and, heaven forbid, maybe dumped it in the toilet. Maybe it was tainted by something else. But that's a different issue as to what information it would glean as opposed to who owned it, so to speak. But it's still the fact that he has not been convicted of anything. Well, let's talk about this. People v. Clark, which is an Illinois Appellate Court case, citing Lanier v. New York, 370 U.S. 130, a United States Supreme Court case. It said a pretrial detainee has no reasonable expectation of privacy in his conversations within his cell. So wouldn't it be a little anomalous if he has no right of privacy and he can eavesdrop on his private conversations but they can't take away a toothbrush that they gave him? Not if they're going to use that toothbrush to guard DNA evidence or evidence against him. They could use the conversations against him, too, couldn't they? Those can be recorded. The recording is presumed to be accurate. But a toothbrush can be contaminated in any number of ways. Well, the integrity of it, though, is a completely different issue. But that's also something, then, that needs to be fleshed out when this goes back for a remand. We can't answer those questions at this point. We don't know those answers. We don't know the answers that lead up to the seizure of the toothbrush or the razor. We don't know anything about what happened except for what, I think it was Halpert testified. I can't remember the officer's name who testified about the shakedown themselves. So, again, breaking it down to one step at a time, if we were to find, if we were to find that a pretrial detainee has no reasonable expectation of privacy in his jail-issued toothbrush, then there's no prejudice to the motion, is there? But under Cunningham, you don't have to reach that issue. That is something that's – that motion to suppress issue is one that needed to be preserved so that there could be a direct review, so that it could be handled by the trial court and then reviewed, if necessary, by the appellate court. So, again, your position is the merits of it have no bearing on this analysis? On this analysis, no. What we are talking about in this case is the advice that was given to Mr. Barrett, and that was, you can challenge this after your guilty plea, and the answer is, no, you can't. The guilty plea waives all non-jurisdictional issues. All of that's waived. Counsel gave him the bad advice. He should have proceeded with what should have been a stipulated bench trial or a bench trial and then – Or a jury trial. Or a jury trial, and then properly preserved these issues for the appellate review. This is not the forum, this is not the procedural posture to reach the merits of those suppression issues. That's what Cunningham says, and I'll go back to Cunningham. Cunningham is, our case, one step removed. It is the appeal from the motion to withdraw the guilty plea that was denied, and the appellate court answered all these questions and established that it was ineffective assistance of counsel for his attorney to tell him that he could appeal from the motions to suppress because of the longstanding law that says guilty plea waives non-jurisdictional issues. The court says a defendant, and I'm quoting, a defendant who wishes to appeal the denial of a motion to suppress makes a mistake in pleading guilty. It's that simple. Oh, I know, and I understand the argument. Your argument hinges on the fact that he lost the right to challenge this on appeal, and whether or not the issue at any merit whatsoever doesn't matter. I think I understand this. At this point, yes. Yes. Whether that will agree with that is another question. This is absolutely true. I'm hoping that you will agree with it and follow Cunningham because if Mr. Barrett had tried to appeal following his motion to withdraw the guilty plea, and let me just throw in here, we have no idea what happened. It was two years, 11 months, and 30 days before Mr. Barrett filed his post-conviction petition. In that two years, 11 months, and 30 days, we don't know what correspondence or communications went on between Mr. Barrett and his attorney. We don't know whether or not there was something where, you know, state bill, you get in for 30 days and you're pretty much incommunicado for 30 days or so. We don't know whether or not he was eventually told by his attorney that there was no motion to withdraw, but we don't know the time period. All of this also can be fleshed out on a remand. This is not something that we can answer. We don't have that information. Well, let's assume we can look at the motion to suppress itself. Excuse me, which one? The one with the DNA? With the DNA. Okay. What is there? We started to talk about this, and then there were other questions. What is there about this toothbrush that would make it his property as a pretrial detainee? Why would it matter, then, that he has it as a pretrial detainee as opposed to an inmate? I go back to just the very status that he hasn't been convicted of anything. A person who's not convicted of anything inherently has more privacy rights. In an object given to him to use by the jail? I would say yes. It's his toothbrush. They've given it to him. We don't know from this record whether it's a toothbrush that they exchange on a daily basis so that it's, you know, a new toothbrush every day. I think there's less of a possessory interest in something that's exchanged on a daily basis versus something that's given to him and said, okay, you use this for the time being until you're released. But doesn't this relate to administrative procedures in the institution? Possibly, but we don't know those answers either. Those are also things that would need to be fleshed out in a remand. We don't have the information at this point by virtue of the guilty plea. We don't have the information to answer any of these questions, but that doesn't make it a frivolous issue, and it doesn't make it an issue that shouldn't be resolved. She's backtracking just to ask the foundational questions. Assuming that we do reach the arguable merits of the motion to begin with, you know, we have to look at the right of privacy. I mean, I'm a little bit perplexed. Would you agree that even if pretrial detainees, the custodial, you know, institution, the jail, if you will, has the absolute right to search somebody's cell at any time? Okay. I would say yes, they do. A jail has the administrative right to go in and shake down somebody's cell. Pretrial are convicted, they have the right to shake down the jail cell at any time. Yes, this is true. So they can do whatever they want, toss the cell, but they can't seize a toothbrush? I think if somebody gives you a toothbrush and says this is yours to use until you are released from this prison, that is your toothbrush. It could be your only possession in the world. What about joint ownership? Right, but what about the concept of joint ownership? I mean, we don't know about gift as opposed to if they can take it back, I mean, you know, joint ownership. But again, we're talking about the foundational questions. We don't have the answers to those foundational questions. Those are things that they didn't get into during the motion to suppress that's not in the record. We can't refer to it. And we don't have those answers. They're questions that must be asked at a different stage of proceedings. And that's what it boils down to. We just don't have the answers. And in that regard, I think it would be, no offense, but it would bind to reach the merits of this particular suppression issue because we simply don't have the information that's necessary to make the conclusions that should be drawn. That has to be done on a remand, and that's what we're asking for. The federal judge who heard the case, it was interesting that the defendant actually then sued the, it looks like maybe the warden of the jail and sued the county. I'm sorry, which case are we talking about, sir? Barrett v. Pollard. Oh, okay. Yeah. And the federal judge seemed to think that it was joint ownership. We realize, of course, that that is not binding on us, but that it was joint ownership of the toothbrush, correct? Yes. That is true. But that still doesn't answer the question here. Like you said, you're not bound by that decision, and we don't have the answers for this case and for Illinois law at this point. If there are no other questions, we're asking that the summary dismissal be reversed and remanded. Thank you. Thank you. Ms. Fleming. Good morning, Your Honors. Good morning. Good morning, counsel. May it please the court. Mary Fleming on behalf of the people. In this case, there was a really, really interesting suppression issue. It was an issue of first impression, but we just can't get to it in this case. Defendants wrapped up in Hodges and Strickland, and it's very difficult to argue that in a case where he pled to one count with a sentence of 15 years when he was facing 6 to 30 years on that count and a minimum of 80 years looking at the other counts, that his counsel was ineffective in, after he ran the motion to suppress, working out and negotiating a plea deal such that he didn't face this amount of time. So whether or not the deal ended up being favorable to the defendant wouldn't be the be-all, end-all of the inquiry. What I'd like you to comment on specifically is her position that arguably, and I think it's obvious, that he didn't have the right to appeal the suppression motion, you know, if you plead guilty. We know that. What she is saying is that basically you never get to the prejudice issue of Strickland because he lost his right, arguably, to litigate this issue. Merely by losing the right to litigate it establishes ineffective assistance of counsel, totally removed from the question of whether or not he was prejudiced by the denial of the motion, whether or not he had merit in that. Do you agree with that argument? We have to look at it all together, though. And I'm not sure that Cunningham says that you'll never get to argue those issues once they're waived. It does talk about Spurlock and allowing someone to go back and withdraw his plea of guilty when that plea is based on unfulfilled promises and it's considered void then. What's that got to do with this case? It doesn't seem to say that you couldn't argue those issues if you went back and withdrew your guilty plea. We're stuck with the record. He didn't do that. That's the gist of the whole argument. By not doing a stipulated bench trial, you lose your right to contest a motion to suppress an appeal if you plead guilty. Can we agree on that? Right? But he could have gone back and withdrawn his plea of guilty. Absent the withdrawal, let's say. Forget about the withdrawal. Okay. Can a defendant contest a motion to deny a motion to suppress an appeal if he's pled guilty without withdrawing his plea? Without withdrawing his plea, no. But we're still tied up in Hodges and Strickland. Go ahead. Go ahead. I'm not getting the point. Yeah, I'm not either. Okay. Well, defendant's claim is that his counsel was ineffective and that he would have at least been able to argue the court erroneously denied the motion to suppress an appeal. That's what she's saying. So we have been asking, oh, Horning, is that it? Because obviously here he didn't get the right to litigate it absent withdrawing the motion. So have I been saying, oh, Horning, does anyone see that there's maybe a prejudice component in here that has to be looked at at some point? Your Honor, I think it's tough to get to that prejudice. It doesn't, if we find that it was ineffective, just you say ineffective assistance of counsel because I didn't get to go forward with the trial at that point. That's what she's saying. Right. But if defendant had gone forward with the trial at that point, he would have been facing much more prison time. So is there a case that says that, that if he would have been facing more prison time, that ineffective wouldn't apply? Is that part of her test? No, Your Honor, but it was part of the strategy at that point. It's tough to argue that when you lost the motion to suppress, that you worked out a deal for the defendant instead. He could have gone forward. Absolutely. He could have gone to trial.  But it wasn't ever going to matter. Because in this case, they were... I see what you're saying. You get it. When you're saying, if you look at this whole case, he came out pretty well. He got a pretty good deal as attorney to litigate the case. Right, right. And if you look at what he was facing on paper, he ended up far better than he could have. But I don't know if that's the answer to her argument. Why do you think it is the answer to her argument? I mean, what does that matter here in what we're looking at? We've got to look at... You're saying that shows his attorney was not ineffective? I mean, we have to look at two prongs here? One prong, Your Honor. And if he had gone forward, let's say counsel decided we need to preserve that motion to suppress issue. And he had gone forward. His client faced much more prison time on an issue that ultimately wouldn't matter. The court said there was still probable cause to get a warrant for his DNA, even without that toothbrush coming back. So you're looking at the first prong and looking at whether or not this was strategy on the part of his attorney? Correct, Your Honor. And it goes to both prongs, really, that decision. And prejudice as well? Correct. Because he needs to show also on the prejudice prong, the Illinois Supreme Court has said, he can't just say I wouldn't have pled guilty. He also needs to come forward with a claim of innocence or a plausible defense. What we've got here is neither of those. We've got I could have preserved this issue, this suppression issue. I could have gone forward on that. And he could have. But ultimately, the people still had enough, even without that toothbrush, to get his DNA on the later test. And they still had enough overall to convict him. He was facing multiple counts, multiple years of prison. It's hard to say that preserving this one really interesting issue would have made any difference. The court said over and over again that it wouldn't have made any difference in this case. Let me see if I'm tearing your argument down to a scientifical extension, however. It would appear to be that a defendant was facing 100 years total. And somehow they work out he's got a viable motion to suppress. But he doesn't file it because he ends up with only 50 years. You're saying that's okay because he got a pretty good deal, even though he would have walked away on the motion to suppress. There could be no ineffective assistance there because on paper he got a pretty good deal. That's only part of it. And because even if he had argued this motion to suppress, it wouldn't have made any difference in this case. He could win the motion to suppress and he's still facing mountains of evidence against him. We still have that he places himself at the apartment. We still have that his quote where he says he probably did do this and he fucked up his life. We still have his shoe print matching the shoe print on the door. We still have a sketch that matches him. That was my initial question. So there is a prejudice part of this to be considered then. Absolutely. And it's difficult to show in this case. It's hard to argue that he should have gone for it on this really interesting motion to suppress issue, which wouldn't have made any difference ultimately in this case. It's hard to fault counsel for at that point working out a really good deal on one count in this case. If there's nothing. Well, what about the privacy issue with respect to the toothbrush? Was that his toothbrush and that he was given in the jail and did he have a privacy right in that toothbrush? It doesn't seem likely in this case. We've got the United States Supreme Court involved versus Wolfish. They're actually looking at a facility that's detaining mostly pretrial people exactly in the same position as defendant. But even if we said he could arguably have a basis, our position is that he doesn't. But even if he did, it doesn't matter in this case. There was still enough to get a warrant for his DNA. We still have him placing himself at this scene. We still have the shoe print. We still have the sketch that matches him. We still have the call in that says Larry Raisin Barrett did this. We only have one Larry Raisin Barrett in the state. It's hard to argue that that would have made any difference. That toothbrush wouldn't have mattered in getting the warrant and it wouldn't have mattered in the evidence against defendant. Who owns the toothbrush? It sounds like from the United States Supreme Court and the federal courts that it belongs to the jail. You give it back to them when you leave. And they probably reuse it for some other reason. I don't know if I'd go that far. I hope not. I hope they're not using it to clean. It goes to the integrity of the exhibit. It applies to her argument, doesn't it? It could have been contaminated. But we never got to that in the motion to suppress. If we had, we could talk about it now, but there's just nothing. Even though it's kind of a fun issue, all around the toothbrush is a great issue. But it doesn't make a difference in this case. Anything more? No, thanks. Thank you, Your Honor. Ms. Silver? Just a couple of things. Yes, he got a very sweet deal. But it's his choice. Was that her? No. It makes absolutely no difference. He is adamant that this motion, these motions to suppress, it's not just the motion concerning the toothbrush. There's the motion concerning Portia Douglas. I don't know whether he wanted to further appeal the motions to suppress statement. We have to also look at the fact that this telephone call that said, yes, it was Larry Raven Barrett that did this, was an anonymous telephone call. Who knows whether that could play into the motions to suppress. We don't know what's the reliability of this anonymous telephone call that led to the DuPage authorities contacting Mount Vernon. We have no idea what was involved with that telephone call. So there's a lot to still litigate in these motions to suppress. And whether or not counsel's advice was wrong is clear from the case law. He was not going to be able to further have a direct appellate review of these issues because of his guilty plea. So it doesn't matter that he wasn't prejudiced or that this may have been strategy on the part of his attorney? I'm not sure what kind of strategy this would be. He negotiated a great deal. That's a given. This was an incredibly good deal, 49 counts, he pleads to one. But let's also look at the fact that he had absolutely no criminal record. So it could be that if he was successful on either of the motions to suppress or the motions to suppress the statements, and it went back and he decided to do a stipulated bench trial or whatever and they actually proceeded to the bench trial, he could have used some affirmative defense. He could have used consent. He could have used whatever. We don't know. But even if that motion to suppress had been granted, the state's arguing that there was a whole host of other evidence that could have been used to convict him. So why would this have mattered? The evidence they pointed out were the footprint and I can't remember what else she said, the footprint and some other evidence. But all of that was based on an anonymous telephone call. All of that came from the anonymous telephone call. What's the reliability of the anonymous telephone call? We don't know. But didn't the investigators follow up with some of this and make sure that there was, I mean, it wasn't just based on an anonymous telephone call, that actually they went out and looked at the footprint and saw that it matched that? That still could have, he still could have raised some affirmative defense of consent, that they were running into their apartment or whatever and knocked on the door with his foot. There's all sorts of other reasons for a footprint being there. We don't know. And there's also, there's in the record, there's a memo from the prosecutor that talks about whether this is admissible or not at a trial of some sort. The prosecutor has a memo in the record that talks about how this alleged victim also claimed that she was sexually assaulted in Las Vegas. She has a history of making these claims. Whether her credibility could be attacked on that basis, that's something that could be decided at a trial. But it all goes to all these questions that we just can't answer at this point. We have to be able to send it back. And it boils down to whether or not the advice that was given to Mr. Barrett that he could appeal these things or collaterally challenge them, whatever phrase he uses in his post-conviction petition, was that advice bad? Yes, it was bad. And under Cunningham, it's ineffective assistance of counsel. And just one more real quick thing. You're asking about the prejudice and what this, where is this prejudice? At page 351 of Cunningham, the only issue raised in the motion to vacate the plea was that the motion to suppress was erroneously denied. Defendant wished to appeal that denial. As in Spurlock, we're presented here with a plea of guilty that was induced by unfulfilled promises. And there's your prejudice. It's an unfulfilled promise to be able to appeal. You are being denied your right to appeal. That's prejudice right there. Who made the promise? I'm sorry? The promise made by who? They are equating the bad advice by Cunningham's attorney to an unfulfilled promise. They're making that jump. And then they go on to say that a criminal defendant must at some point be afforded the equivalent of direct review and an appellate advocate. A court cannot deny a defendant an attorney-assisted appeal by examining the record and determining that the defendant would not have succeeded in the appeal. That's where you're at. That answers the questions that we're talking about. You can't answer those questions. Based on this, and they're citing People v. Moore, they're citing Pence v. O'Reilly, you are not in a position. This court is not in a position at this point, at this procedural posture, to answer these questions. It has to go back and be more fully litigated. Thank you. Thank you very much, counsel. The court will take the matter under advisement and render a decision on due course. We stand in brief recess until the next case. Thank you.